### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| CALVIN CAMPS,<br><br>                    Plaintiff<br><br>        v.<br><br>MILLIE SCHOLTZ, *et al.*,<br><br>                    Defendants | Civ. No. 17-1895 (RMB-JS)<br><br><br>**OPINION** |

APPEARANCES:

CALVIN CAMPS
MQ 1920
SCI Phoenix
P.O. Box 244
Collegeville, PA 19426
        Plaintiff, *pro se*

DANIEL GEE, Esq.
Evan H.C. Crook, Esq.
MALAMUT & ASSOCIATES, LLC.
457 Haddonfield Road, Suite 500
Cherry Hill, NJ 08002
        On behalf of Defendants Warden Scholtz, Captain
        McDonnell, Sgt. Davis and Board of Chosen Freeholders of
        Burlington County[1]

**BUMB,** United States District Judge

    This matter comes before the Court upon the summary judgment

motion of Defendants Warden Scholtz, Captain McDonnell, Sgt. Davis

---

[1] The County Defendants have corrected their names and titles,
which were misidentified in the Amended Complaint. The Court will
refer to the defendants' corrected names. (ECF No. 170 at 1.)

and Board of Chosen Freeholders (collectively the "County Defendants") (County Defs' Mot. for Summ. J., ECF No. 170); and Brief in Supp. of Summ. J. (County Defs' Brief, ECF No. 170-1.) Plaintiff did not file a brief in opposition to the County Defendants' motion for summary judgment but he filed a series of letters and motions (ECF Nos. 171-185), which the Court will consider.

The Court takes judicial notice of dozens of civil cases filed by Plaintiff in the Eastern District of Pennsylvania, available on the Court's Public Access to Court Electronic Records, www.PACER.gov. See In re Congoleum Corp., 426 F.3d 675, 678 n. 2 (3d Cir. 2005) (taking judicial notice of proceedings in other courts). Particularly, the Court takes judicial notice of Camps v. Nutter, Civ. Action No. 14-01498 (E.D. Pa. Mar. 12, 2014). Plaintiff's complaint concerning the conditions of confinement in this matter are virtually a carbon copy of his allegations of the conditions in Curran-Fromhold Correctional Facility in Philadelphia in 2014.

Pursuant to Federal Rule of Civil Procedure 78(b), the Court will determine the motion for summary judgment on the briefs without oral argument.

I.    BACKGROUND

Plaintiff's original complaint was filed in the New Jersey Superior Court, Burlington County on February 29, 2016. (Compl.,

2

ECF No. 1 at 8.) Defendant Mildred Scholtz removed the action to this Court on March 22, 2017. (Notice of Removal, ECF No. 1 at 1.) On May 1, 2017, Defendants filed a motion to dismiss the complaint because Plaintiff, who was granted *in forma pauperis* status in state court, had "three strikes" under the Prison Litigation Reform Act, 28 U.S.C. § 1915(g), which prohibited him from filing a civil action in federal court unless he showed imminent danger of serious physical injury. (Mot. to Dismiss, ECF No. 9.) Although Plaintiff filed at least three cases *in forma pauperis* that were dismissed as frivolous, the Court was constrained to deny the motion to dismiss based on the plain language of 28 U.S.C. § 1915(g) restricting the rule to cases filed *in forma pauperis* in federal court. (Opinion, ECF. No. 20.) To prevent prisoners from filing in state court to get around the three strikes rule in federal court requires congressional action. Until such time, "recreational litigants" such as Plaintiff get around the three strikes rule by filing in state court.

On December 18, 2018, Plaintiff was granted leave to amend the complaint to add Defendants CFG Health Systems, LLC; Dr. Grace Nugent; Christina Owens, LPN; Mary Quinn-Murphy, LPN; Lynn Johnson, NP and Stacey Chase, RN as defendants. (Order, ECF No. 92; Am. Compl., ECF No. 93.) On January 23, 2020, the County Defendants filed a motion for summary judgment. (County Defs' Mot.

for Summ. J., ECF No. 170.) Plaintiff subsequently filed a series of letters and documents. (ECF Nos. 171-183.)

## II. THE AMENDED COMPLAINT

On December 18, 2018, the Honorable Magistrate Judge Joel Schneider granted Plaintiff's Motion to Join Defendants and directed the Clerk to docket Plaintiff's Motion to Join Defendants as the Amended Complaint. (Order, ECF No. 92.) Plaintiff did not reassert all allegations against the original defendants in his Motion to Join Defendants. Plaintiff's many filings in this matter suggest that he intended to continue his claims as pled in the original complaint. Because Plaintiff is proceeding *pro se* and is thus entitled to liberal construction of pleadings, the Court will treat the Amended Complaint as incorporating the allegations filed in the original Complaint. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("a document filed *pro se* is 'to be liberally construed[.]'") (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)).

Plaintiff alleges the following facts against the County Defendants. (Compl., ECF No. 1; Am. Compl., ECF No. 93.) Plaintiff was a pre-trial detainee in Burlington County Detention Center ("BCDC")[2] at all relevant times alleged in the Complaint. (Am. Compl., ¶4.) Warden Mildred Scholtz, Captain McDonnell and

---

[2] Plaintiff refers to the facility as "Burlington County Jail" but documents submitted by Warden Matthew Leith indicate the facility is officially called "Burlington County Detention Center." (ECF No. 170-2 at 5.) The Court will refer to the facility as "BCDC."

Sergeant Davis are employed by BCDC and are responsible for its daily operations and overseeing all of its employees. (Id., ¶¶5-7.) Plaintiff alleges the Board of Chosen Freeholders of Burlington County are responsible for all policies carried out by the officials at BCDC. (Id., ¶8.)

At the time Plaintiff filed the original Complaint, he was the third man in his assigned cell, which was seven feet by ten feet in size and designed to hold two inmates; and he was forced to sleep in a plastic boat next to the toilet, exposed to urine and feces. (Compl., ECF No. 1 at 11.) Plaintiff spent the majority of his pre-trial detention in this overcrowded cell. (Id.)

Plaintiff alleges that the overcrowding combined with continuous lockdowns subjected him to inadequate medical care and deprived him of access to the courts. (Id. at 12.) The lockdowns prevented him from showering on a daily basis. (Id.) The showers were covered in black mold and were in disrepair. (Id. at 12-13.) The cells were infested with insects and rodents. (Id. at 13.)

Plaintiff further alleged that due to overcrowding there was (1) inadequate "day room" and recreational space; (2) poor ventilation and poor air quality; (3) stained or damaged mattresses with stained or damaged sheets, towels and blankets; (3) inadequate laundry practices, which forced inmates to wash clothes in their sinks and toilets in their cells; (4) failure to train and supervise staff; (5) inadequate staffing leading to constant

lockdowns; and (6) denial of access to programs and services. (<u>Id.</u> at 14-17.)

As to individual defendants, Plaintiff alleged Sergeant Davis denied his requests, over the course of a number of months, for envelopes with postage, which precluded him from sending legal mail for his cases in Pennsylvania state and federal courts. (<u>Id.</u> at 17.) Plaintiff alleged Captain McDonnell refused him use of the law library, refused his requests regarding his missing property, including money taken when he was arrested; and refused his requests about sleeping on the floor in a plastic boat. (Compl., ECF No. 1 at 17.) Plaintiff alleged Warden Scholtz "refused to stop those illegal acts." (Compl., ECF No. 1 at 18.) Plaintiff alleged all of the defendants approved the policies and customs that caused his constitutional injuries. (<u>Id.</u> at 23.)

In the Amended Complaint, Plaintiff alleges he was deprived of his property taken by BCDC employees without due process. (Am. Compl., ECF No. 93 at 8.) He further alleges that Defendants refused to send out his legal mail to the Court of Common Pleas, Civil Division, and he "suffered injury to his filed LEGAL Cases…." (<u>Id.</u>)

Plaintiff added several medical provider defendants in the Amended Complaint, alleging they refused to provide him with anti-viral medications that he had been receiving for Hepatitis C prior to his incarceration in BCDC. It appears that Plaintiff also seeks

to hold the County Defendants liable for failing to provide him with requested medical treatment. (Id. at 9.) Plaintiff brings his claims under 42 U.S.C. § 1983 and alleges violations of the United States Constitution and the New Jersey Constitution. (Id. at 10.) The New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*, was modeled after and has repeatedly been interpreted analogously to § 1983. Trafton v. City of Woodbury, 799 F.Supp.2d 417, 443 (D.N.J. 2011) (citations omitted). Thus, the Court will analyze the claims together, following § 1983 jurisprudence.

III. DISCUSSION

    A.   Summary of Arguments

        1.   The County Defendants' Brief

The County Defendants argue they are entitled to summary judgment because Plaintiff fails to state a claim supported by competent evidence in the record. (County Defs' Brief, ECF No. 170-1 at 9.) First, the County Defendants assert the fact that Plaintiff was subject to sleeping three to a cell designed for two, in proximity to the toilet, does not rise to the level of a constitutional violation. (Id.) Second, the record is devoid of competent evidence concerning the alleged unsanitary conditions. (Id. at 10.) In sum, the County Defendants contend the complained of conditions of confinement do not rise to the level of asserting a violation of a "clearly established" right. (Id.)

7

Second, the County Defendants argue they are entitled to qualified immunity. (Id.) They rely on the Third Circuit's decision in Hubbard v. Taylor, 538 F.3d 229, 236 (3d Cir. 2008), noting that the degree of prison overcrowding that constitutes punishment in violation of the Fourteenth Amendment is not clearly established. (County Defs' Brief, ECF No. 170-1 at 12.) The Third Circuit specifically stated, "our own precedents have never established a right of pretrial detainees to be free from triple-celling or from sleeping on a mattress placed on the floor." Id. (quoting Hubbard, 538 F.3d at 236.)

As to the alleged unsanitary conditions, the County Defendants contend the record is devoid of any evidence of mold and/or insects and rodents. (Id. at 13.) Even assuming the conditions existed, the County Defendants contend the record is devoid of any facts showing that any defendants ignored the unsanitary conditions or denied plaintiff medical treatment for any medical injuries arising from either insect population and/or mold. (Id. at 13-14.)

Third, the County Defendants maintain that the claims against each of them must be dismissed as a matter of law because there are no facts alleged and/or competent evidence in the record as to any personal involvement of these individuals in any constitutional violation. (Id. at 14.) The County Defendants also suggest the Burlington County Board of Chosen Freeholders is not

8

a separate legal entity from Burlington County and therefore, not subject to suit. (Id. at 15.)

Even if the proper municipal defendant is Burlington County, the County Defendants assert Plaintiff has failed to plead facts and/or support the complaint with competent evidence that county policymakers are subject to liability. (County Defs' Brief, ECF No. 170-1 at 16.) Plaintiff has failed to put forth competent evidence to create a genuine issue of material fact that the complained of conditions of confinement i.e. overcrowding, lockdowns and/or unsanitary conditions were caused by the customs and/or policies of the facility as to be the moving force behind any alleged constitutional violation. (Id.)

### 2. Plaintiff's Filings

Plaintiff did not file a brief in opposition to the County Defendants' Motion for Summary Judgment. Pursuant to Federal Rule of Civil Procedure 56(c)(3), "[t]he court need consider only the cited materials, but it may consider other materials in the record." Thus, the Court considers the following materials in the record.

After the County Defendants filed their motion for summary judgment, Plaintiff's first filing was a motion to appoint pro bono counsel (Mot. Appoint Counsel, ECF No. 171), which was denied on February 27, 2020. (Order, ECF No. 181.) In that motion,

Plaintiff asserted he was not provided with discovery concerning the conditions of confinement. (Id. at 2.)

On February 3, 2020, Plaintiff submitted his own affidavit, stating that his property was taken when he was arrested and brought to Burlington County Jail. (Aff., ECF No. 172 at 2.) He cites to seven different lawsuits he initiated in 2014 for failure to treat his liver condition. (Aff. ECF No. 172 at 3.) Plaintiff states that he exhausted his administrative remedies by appealing to Warden Scholtz. (Id. at 5.)

Plaintiff also continued to file copies of his late discovery requests on the Medical Defendants. (Letters, ECF Nos. 175-177.) He filed a motion to compel discovery, which was denied because the deadline for discovery, which had been ongoing for approximately three years, had passed. (Mot. to Compel, ECF No. 178; Order, ECF No. 182.) Plaintiff also filed documents concerning medical malpractice lawsuits brought in other jurisdictions. (ECF No. 183.)

B.    Summary Judgment Standard of Review

Summary Judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Daubert v. NRA Group, LLC, 861 F.3d 382, 388 (3d Cir. 2017). "A dispute is "genuine" if 'a reasonable jury could return a verdict for the nonmoving party[.]'" Baloga v. Pittston Area Sch. Dist.,

10

927 F.3d 742, 752 (3d Cir. 2019) (quoting <u>Santini v. Fuentes</u>, 795 F.3d 410, 416 (3d Cir. 2015) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). "[A] fact is 'material' where 'its existence or nonexistence might impact the outcome of the suit under the applicable substantive law.'" <u>Baloga</u>, 927 F.3d at 752 (citing <u>Anderson</u>, 477 U.S. at 248).

The burden then shifts to the nonmovant to show, beyond the pleadings, "'that there *is* a genuine issue for trial." <u>Daubert</u>, 861 F.3d at 391 (quoting <u>Celotex Corp. v. Catrett</u>, 447 U.S. 317, 324 (1986) (emphasis in <u>Daubert</u>)). "With respect to an issue on which the non-moving party bears the burden of proof, the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." <u>Conoshenti v. Public Serv. Elec. & Gas Co.</u>, 364 F.3d 135, 145–46 (3d Cir. 2004) (quoting <u>Celotex</u>, 477 U.S. at 325).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of

> a genuine dispute, or that an adverse
> party cannot produce admissible evidence
> to support the fact.

Fed. R. Civ. P. 56(c)(1).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)). The court's role is "'not ... to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" <u>Baloga</u>, 927 F.3d at 752 (quoting <u>Anderson</u>, 477 U.S. at 249)).

Plaintiff alleged that he has not received all discovery (Letter, ECF No. 185); therefore, summary judgment for the defendants is improper. The Court disagrees. The Court denied Plaintiff's most recent discovery motion, noting "Plaintiff has had more than a sufficient opportunity to conduct discovery and the discovery at issue was served late." (Order, ECF No. 182.) Discovery was permitted for a period of nearly three years. (<u>Id.</u> at 2.) No further discovery is permitted.

C.   <u>Conditions of Confinement</u>

1.   <u>Standard of Law</u>

Conditions of confinement claims brought by pretrial detainees are analyzed under the Due Process Clause of the Fourteenth Amendment. <u>Hubbard</u>, 538 F.3d at 230. The inquiry in

12

such cases is whether the conditions amount "to punishment of the detainee." Id. at 231 (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)). The first part of the inquiry is "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." Hubbard, 538 F.3d at 232 (quoting Bell, 441 U.S. at 538-39)). If there is a legitimate governmental purpose, the question is whether the condition is excessive in relation to that purpose. Id. Governments have an interest in maintaining security and order in operating correctional facilities in manageable fashion, and courts should ordinarily defer to the professional expertise of corrections officials in the administration of detention facilities. Id. (quoting Bell, 441 U.S. at 540 n. 23) (citations omitted)).

2.  Analysis

Triple-celling, even if it occurred for the majority of Plaintiff's seven-month confinement in BCDC, does not amount to punishment in violation of the Fourteenth Amendment. Hubbard, 538 F.3d at 233 (without evidence that sleeping on the floor resulted in disease, sleeping on a floor mattress for three to seven months did not violate Due Process rights). Prison officials have a legitimate interest in managing an overcrowded prison. Id. (citing Union County Jail Inmates v. DiBuono, 713 F.2d 984, 993 (3d Cir. 1983). Plaintiff's nonspecific allegations of unsanitary conditions such as mold in the showers, insects and rodents, poor

ventilation, inadequate laundry practices and lockdowns due to staff shortages, especially where unsupported by evidence in the record[3] after the close of discovery, fail to establish that Plaintiff was subjected to a genuine privation and hardship over an extended period of time. <u>Hubbard</u>, 538 F.3d at 235; <u>see</u> <u>Lindsey v. Shaffer</u>, 411 F. App'x 466, 468 (3d Cir. 2011) (sleeping on mattress on the floor and sharing a toilet did not amount to cruel and unusual punishment under the Eighth Amendment).

Even if Plaintiff had garnered some evidence in support of his allegations, the individual defendants would be entitled to

---

[3] Local Civil Rule 56.1 provides, in pertinent part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement, and if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion. In addition, the opponent may also furnish a supplemental statement of disputed material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition….

Plaintiff did not comply with this rule. If there is competent evidence supporting Plaintiff's conditions of confinement, loss of property or access to courts claims in this voluminous record that the Court missed, Plaintiff may file a motion for reconsideration.

qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (quoting <u>Reichle v. Howards</u>, 132 S. Ct. 2088, 2093 (2012) (internal quotation marks and alteration omitted)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u> (citing <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741, (2011)).

Plaintiff has not cited, nor can the Court find, clearly established law that "triple celling," with nonspecific allegations of inadequate community space, mold in the showers, the presence of insects and rodents, torn or stained bedding, poor ventilation and a nonspecific number and duration of lockdowns constitutes punishment in violation of the Fourteenth Amendment. <u>See</u> <u>Hubbard</u>, 538 F.3d at 236 (noting scant guidance from the Supreme Court on what constitutes "punishment" under the Fourteenth Amendment); <u>Wilson v. Seiter</u>, 501 U.S. 294, 305 (1991) ("Nothing so amorphous as 'overall conditions' can rise to the

level of cruel and unusual punishment when no specific deprivation of a single human need exists.")

D. <u>Claims Against Individual Defendants</u>

The County Defendants maintain that there are no facts alleged nor competent evidence in the record as to any personal involvement of Warden Scholtz, Captain McDonnell or Sergeant Davis in a constitutional violation. (County Defs' Brief, ECF No. 170-1 at 14-15.) As to Sergeant Davis, Plaintiff alleged she denied his requests for envelopes and postage, over the course of several months, which precluded him from sending legal mail for his cases in Pennsylvania state and federal courts. In order to state a First Amendment claim for violation of the right of access to courts, a plaintiff must establish an actual injury. <u>Lewis v. Casey</u>, 518 U.S. 343, 352-53 (1996). Thus, a plaintiff must demonstrate "that a nonfrivolous legal claim had been frustrated or was being impeded." <u>Id.</u> Plaintiff's allegations do not rise to this level because he does not allege any actual injury from delay in sending a specific piece of legal mail relevant to a nonfrivolous legal claim.

Next, Plaintiff seeks to hold Captain McDonnell liable for refusing use of the law library, refusing requests regarding missing property, and refusing requests about sleeping on the floor in a plastic boat. Plaintiff has not established that sleeping on the floor in a plastic boat violated his constitutional rights;

16

therefore, Captain McDonnell is not liable for not addressing Plaintiff's requests in this regard. Like his claim that Sergeant Davis denied him postage and envelopes for legal mail, Plaintiff has not demonstrated or even alleged that McDonnell's denial of his requests to use the law library denied Plaintiff access to the courts. Lewis, 518 U.S. at 351 (because there is not a freestanding right to a law library, a plaintiff must show actual injury, for example, that inadequacies of the law library prevented him even from filing a complaint.)

Plaintiff also attempts to state a claim for deprivation of property. "A prisoner's due process claim based on a state actor's unauthorized deprivation of property is not actionable under § 1983 unless no adequate post-deprivation remedy is available." Mattis v. Dohman, 260 F. App'x 458, 461 (3d Cir. 2008) (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)). Prison grievance systems that allow prisoners to complain about lost property are adequate post-deprivations remedies. Id. (citing Tillman v. Lebanon County Corr. Facility, 221 F.3d 410, 422 (3d Cir. 2000)). State tort suits for conversion of property are also adequate post-deprivation remedies. Id. (citing Hudson, 468 U.S. at 535). Plaintiff has not alleged facts that would permit a reasonable fact finder to conclude that adequate post-deprivation remedies were unavailable to him. Thus, this claim fails against Captain McDonnell.

Finally, Plaintiff alleged Warden Scholtz is liable for failing to stop illegal acts. A supervisor is not liable for the unconstitutional acts of his or her subordinates under 42 U.S.C. § 1983 based on respondeat superior. Ashcroft v. Iqbal, 556 U.S 662, 676 (2009). Here, Plaintiff has not established Warden Scholtz's knowledge of any unconstitutional acts, nor has he alleged in a nonconclusory manner that Warden Scholtz maintained a policy or custom that violated his constitutional rights. See Barkes v. First Correctional Medical Inc., 766 F.3d 307, 320 (3d Cir. 2014) (noting supervisory liability may be found when a supervisor is deliberately indifferent to a known deficiency in government policy or procedure that creates an unreasonable risk of constitutional injury) *rev'd on other grounds by* Taylor v. Barkes, 135 S. Ct. 2042 (2015). Therefore, the individual defendants, Davis, McDonnell and Scholtz, are entitled to summary judgment on Plaintiff's § 1983 and NJCRA claims.

E.    Claims Against Burlington County

The County Defendants contend that the Board of Chosen Freeholders of Burlington County is not an entity that is independently subject to legal suit. (County Defs' Brief, ECF No. 170-1 at 15.) The Court finds that even if the complaint is construed as against Burlington County, Plaintiff has not pled sufficient facts to establish the County was the moving force

behind an alleged constitutional violation based on its policies or customs.

A plaintiff may bring a claim for municipal liability under § 1983 by alleging that an official municipal policy, including practices so persistent and widespread as to practically have the force of law, caused his or her constitutional injuries. Connick v. Thompson, 563 U.S. 51, 60-61 (2011). Vague assertions of a custom or policy, with virtually no evidentiary support, fail to state a § 1983 claim against a municipality. Groman v. Township of Manalapan, 47 F.3d 628, 637 (3d Cir. 1995). Plaintiff's claims of customs or policies causing constitutional injury are nothing more than conclusory assertions. Therefore, Burlington County is entitled to summary judgment.

F.   Medical Claims Against Non-Medical Officials

It appears the Plaintiff seeks to hold all defendants liable for the alleged failure to treatment his Hepatitis C with anti-viral medications. In a separate Opinion, the Court has found that the claims against the Medical Defendants are barred by the statute of limitations. The County Defendants are non-medical prison officials.

"If a prisoner is under the care of medical experts …, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004). Thus, writing complaints about

medical treatment to a non-medical prison official when the prisoner is being treated by a prison doctor will not subject the non-medical prison official to liability under § 1983. Spruill, 372 F.3d at 236 (citing Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with … deliberate indifference.'" Id.; see Natale v. Camden County Correctional Facility, 318 F.3d 575, 581-82 (3d Cir. 2003) (analyzing Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar Eighth Amendment claims). Instead, a plaintiff must show that a prison authority

> "den[ied] reasonable requests for medical treatment ... and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' [Monmouth County Correctional Institutional Inmates v. Lanzaro], 834 F.2d [326], 346 (quoting Westlake v. Lucas, 537 F.2d 857, 860 (6th Cir. 1976)), and (2) where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,'" id. (quoting Ancata v. Prison Health Servs., 769 F.2d 700, 704 (11th Cir. 1985)) (alterations in original).

Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004).

Plaintiff makes only conclusory allegations, based on submitting grievances, to hold the County Defendants liable for alleged inadequate medical care. Plaintiff falls far short of meeting the pleading standard, let alone providing competent

evidence supporting his claims in opposition to summary judgment. The County Defendants are entitled to summary judgment on all claims.

IV.   CONCLUSION

For the reasons set forth above, the Court will grant the County Defendants' motion for summary judgment.


An appropriate Order follows.

Date:  March 23, 2020

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District Judge**
